# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES,

v.                  Criminal Case No. 1:15-cr-30

GREGORY CASON,
      Defendant.

## MEMORANDUM OPINION AND ORDER DECIDING DEFENDANT'S MOTION FOR BILL OF PARTICULARS - DOCKET NO. 15

### I
### PROCEDURAL HISTORY

On March 03, 2015, the Grand Jury indicted Defendant on three counts: (1) Conspiracy to Defraud the United States, pursuant to 18 U.S.C. § 371; (2) Fraud and False Statements, pursuant to 26 U.S.C. § 7206(2); and (3) Aiding and Assisting in the Preparation and Filing of False Tax Forms, pursuant to 18 U.S.C. § 2. (Docket No. 1.) On March 24, 2015, Defendant appeared before the undersigned and entered a plea of not guilty to all counts of the indictment. (Docket No. 10.) On April 06, 2015, this case was designated as complex. (Docket No. 13.) Defendant filed the instant Motion on June 30, 2015, moving the Court to order the Government to provide a bill of particulars. (Docket No. 15.) The United States did not respond to the motion prior to the July 20, 2015 hearing. During the hearing the United States represented it had prepared a response to the motion and thought that the response had been filed. The United States sought leave to file its response late. The Defendant did not oppose the late filing. The United States filed its response on July 21, 2015 (Docket No. 30).

## II.
## CONTENTIONS OF THE PARTIES[1]

Defendant

   Defendant contends:

1. The indictment fails to provide sufficient information to allow Defendant to effectively prepare his defense and avoid unfair surprise.
2. In order to effectively prepare his defense and avoid unfair surprise Defendant contends that the United States must provide him with a bill of particulars that provides the following information:

     A.    The names and curriculum vitae of the Government's expert witness or witnesses and a written summary of any testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial, including the expert witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

     B.    All working papers and other supporting documentation that was utilized to prepare the Government's experts' reports.

     C.    All working papers and other supporting documentation that was utilized to prepare the "Chadwick Report."

     D.    Count 1 of the Indictment alleges that "thousands of dollars of cash sales" were not included in the 2005, 2006, 2007 and 2008 Form 1120S "U.S. Income Tax Return for an S Corporation" for AKA Enterprises, Inc. For each year, Mr. Cason requests all documents showing the specific amount of said cash sales that were not included in each year's Form 1120.

     E.    Count 1 of the Indictment alleges that certain 2005, 2006, 2007 and 2008 Form 1040 "U.S. Individual Income Tax Return" for unnamed and unidentified person(s) contained "materially false statements" as to the income for such unnamed and unidentified person(s). For each year, Mr. Cason requests all documents showing the specific amounts

---

[1] Except where specifically quoted, the following contentions of Defendant and the United States are summaries of those contentions reflecting the Court's understanding of them. The Court's summaries are derived from the written contentions set out in the Defendant's motion and the oral arguments presented during the hearing of July 20, 2015..

and basis for the Government's contention that each return contained materially false statements in each year's Form 1040.

F.  Count 1 of the Indictment alleges that for every quarter from 2005 through 2009 Mr. Cason caused to be filed Form 914 "Employer's Quarterly Tax Returns" which contained "materially false statements as to wages, tips and other compensation being paid by AKA Enterprises, LLC [sic] in that the forms failed to include cash being paid to some employees." For each such quarter, Mr. Cason requests all documents showing the specific amounts of wages, tips and other compensation -- identifying each such category -- and identifying each employee that received same and the amounts thereof for each such employee.

G.  Count 1 of the Indictment alleges "other overt acts." Mr. Cason requests that the Government state with specificity all such "other overt acts" and all documents that support the Government's allegations.

H.  Count 2 of the Indictment that "thousands of dollars of cash sales" were not included in the 2008 Form 1120S "U.S. Income Tax Return for an S Corporation" for AKA Enterprises, Inc. Mr. Cason requests all documents showing the specific amount of said cash sales that the Government intends to prove were not included in said Form 1120S.

I.  Count 3 of the Indictment alleges that Form 1040 "U.S. Individual Income Tax Return" for some unnamed and unidentified person(s) was "fraudulent and false as to material matters" and contained "materially false statements" as to the 2008 income for such unnamed and unidentified person(s). Mr. Cason requests all documents showing the specific amounts and basis for the Government's "materially false statements" as to the 2008 income for such unnamed and unidentified person(s). Mr. Cason requests all documents showing the specific amounts and basis for the Government's contention that each return was "fraudulent and false as to material matters" and contained "materially false statements" in each year's Form 1120S.

J.  CD copies of all documents that were seized from Mr. Cason at his office, home or anywhere else, and CD copies of all documents that were seized from or otherwise relate to the

investigation and prosecution of Mr. Rees and Mr. Lapinto.

K. With respect to David Rees' American Express credit card statements which the Government has previously provided through discovery, to which are referred in the preceding paragraph, Mr. Cason requests all documents identifying the bank(s) from which all American Express credit card payments same were made and copies of all monthly bank statements from said bank(s) for 2005 through 2009 and copies of all cancelled checks reflecting any such American Express credit card payments.

L. Copies of all credit card statements related to this American Express credit card from 2005 through 2009 that have not previously been provided.

M. Copies of all credit card statements from 2005 through 2009 for the Triple M credit card held at BB&T.

N. Copies of all Trevor and Associates bank statements from 2005 through 2009 including those from the "Fahey Bank in Ohio."

O. Copies of all documents showing how many ATM machines were located in the "Rees" business from 2005, where they were in place, when they were so placed and whether the "Rees" business owned and/or funded any such ATM machines. For all such ATMs, Mr. Cason requests all documents showing (a) when each ATM was funded by Mr. Rees, Mr. Lapinto, or anyone on their behalf, (b) from where the monies came that were used to fund the ATMs (that is, from monies in a specific bank account or some other source), (c) the amounts of any such monies used to fund each ATM

P. Copies of all bank statements for all bank accounts into which all ATM withdrawals and/or fees were "reimbursed," "collected" or otherwise deposited or credited from 2005 through 2009.

Q. All documents identifying all statements of accounts into which cash deposits were made, when such cash deposits were made, from where the cash that was deposited came and the expenses which were covered by such cash deposits. Please provide the bank statements for all such accounts from 2005 through 2009.

R. Copies of all documents identifying the bank accounts from which checks were written to Richard Rees and copies of all bank statements, including copies of all cancelled checks, for all such banks from 2005 through 2009.

S. Copies of all transcripts from any and all meetings with the undercover officer and either Mr. Rees and/or Mr. Lapinto, or any person on their behalf, not previously provided, and copies of all debriefings of Mr. Rees and Mr. Rees, nor previously provided.

T. Copies of all statements and/or memorandum interviews related to any past or current employees of any "Rees" entities, including AKA Enterprises, Inc., and any other persons related to the investigation of Mr. Cason, Mr. Rees and/or Mr. Lapinto not previously provided.

U. Copies of all bank statements used by or for the benefit of any of the "Rees" entities, including AKA Enterprises, Inc., Mr. Rees and/or Mr. Lapinto from 2005 through 2009 not previously provided.

V. Copies of all loan documents and lines of credit documents for any loans obtained by the "Rees" entities, Mr. Rees and/or Mr. Lapinto from 2005 through 2009 and copies of all bank statements and other documents that would reflect any such loan or line of credit proceeds being deposited.

(Docket No. 15.)

United States

United States contends:

1. The crimes with which Defendant is charged, "by their very nature, are committed by the failure to keep accurate records, thus making it difficult or essentially impossible to produce many of the records the defense is requesting, as they do not exist."
2. What the Defendant seeks through a bill of particulars is aimed at showing there was no tax loss and the United States does not have to prove a tax loss in this case.
3. The United States has either provided to Defendant all of the discovery it has in its possession or has made it available to the Defendant. The United States cannot produce what it does not have.
4. In response to the specific request the United States responds:

A.   United States has not yet retained and expert; may call the accountant who prepared AKA's corporate returns and the personal returns of AKA's owner after AKA terminated Defendant as preparer; Defendant has that accountants work papers; and the United States intends to use the ratios of cash to credit card transactions in the "legitimate year" and apply the ratios to the known credit card transactions in the years Defendant prepared the returns to develop estimates of the cash the United States believed was not reported during each of those years. This is a mathematical calculation and not an opinion.

B.   The Defendant has the work papers of the accountant who prepared the tax returns for the legitimate year.

C.   The Chadwick report is a report prepared by an analyst retained by the owner of AKA to estimate tax loss for use at the owner's sentencing hearing. The United States did not hire Chadwick and does not have his work papers. If Defendant wants the work papers they will have to arrange to get them from Chadwick.

D.   There are no records of cash sales because the essence of the conspiracy was to not track and report the cash income of AKA. The bank records of the credit card sales have been made available to Defendant.

E.   The Defendant has been provided with all of the "subject returns." Because the conspiracy was to not report cash and only report credit card purchases as gross income, the income reported under AKA and passed through as income to the individual owner of AKA was false thereby making other lines of the tax return that come after the gross income line also false. The failure to deduct legitimate business expenses on the AKA corporate tax returns to cover use of company credit for personal expenses also made the company and the personal tax returns false.

F.   Because the nature of the conspiracy was impede the IRS from determining taxes due and owing, cash paid under the table to employees was not recorded and the United States cannot provide the detail Defendant demands by this request. The United States will introduce evidence from employee witnesses who were paid cash under the table to show the mode of operation of the conspiracy. The memorandums of

    interview of those employees have been turned over to Defendant.

  G.  "The government is not required to detail the "overt acts," and the defense cites no case-law in support of that request."

  H.  "As explained above, the government cannot show the specific amount of cash sales."

  I.  Same as "H."

  J.  The United States has provided Defendant with a thumb drive containing digital images of its discovery which includes everything seized from Defendant. The United States has made available for Defendant to view the hard copies of all materials seized from others. The United States offered to deliver the hard copies of documents seized from others and now located in many file boxes to a third party copying company selected by Defendant in order that the documents may be scanned and copied for Defendant's use and at Defendant's expense.

  K, L, M, N, O, P, Q, R, T, U, V. "To the extent there may be documents in the government's possession which identify the items requested, they have been provided to the defense or have been made available to the defense."

  S.  "These have been provided to the defense."

5. To the extent Defendant "suggests that the United States should narrow down from the voluminous discovery the documents it most likely will use at trial and the United States agrees. The United States would suggest that the court establish the date of August 13, 2015, for this to occur, as this will provide enough time for the United States to comply, while occurring sufficiently in advance of the status conference now set for August 20, 2015."

III.<br>Discussion

A. The Indictment

1. Count 1

  18 U.S.C.§371 provides: "If two or more persons conspire either to commit any offense against the United States, or any agency thereof in any manner or for any purpose, and one or more

of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

"A conspiracy to defraud the United States by frustrating the lawful information-gathering function of the Internal Revenue Service (IRS) is commonly referred to as a ['Klein conspiracy']". U.S. v. Gambone, 125 F. Supp.2d 128, 131 (E.D.Pa. 2000).

"A 'Klein conspiracy', involving conspiracy to defraud the United States by frustrating lawful information gathering function of Internal Revenue Service (IRS), consists of three elements: (1) existence of an agreement to accomplish an illegal or unlawful objective against the United States, (2) commission of an overt act by conspirators in furtherance of conspiracy, and (3) intent by Defendant to agree to the conspiracy and to defraud the United States. *Id*., see also United States v. Tedder, 801 F.2d 1437, 1446 (4th cir. 1986). In short, a Klein conspiracy requires that an agreed upon objective of the conspiracy be to "thwart the IRS's [sic] efforts to determine and collect income taxes." United States v. Vogt, 910 F. 2d 1184, 1203 (4th Cir. 1990).

In Count One, the United States clearly alleges that Defendant (Cason), conspired with other persons to prepare and caused to be filed in 2006, 2007, 2008, and 2009 1120S U.S. Income Tax Returns for an S Corporation, AKA Enterprises, Inc., and personal 1040 income tax returns for other persons which contained materially false statements as to the gross receipts and sales of AKA Enterprises and made materially false statements as to the income for persons. Count I also alleges Defendant (Cason) prepared and caused to be filed with the IRS Form 941 returns on a quarter year basis for 2005 through 2009 in which returns materially false statements were made as to the amount of wages, tips and other compensation were paid by AKA Enterprises, L.L.C. in that the 941 forms failed to include cash being paid to some employees.

As explained by the United States during the hearing, Defendant (Cason) in his role as the

accountant for AKA and its principal or principals, counseled and agreed with AKA's principals to not report and, in fact, to provide false tax returns for AKA and its principals to file with the IRS which failed to include the cash receipts of Bent Willy's Bar (a business owned and operated by AKA) and the cash paid under the table to some employees thereof for 2005, 2006, 2007, 2008, and 2009. As explained, the income from AKA, a corporation, directly flows to the principals as their income for tax purposes. Therefore if there is a materially false statement in the returns or the reporting of expenses associated with AKA's business, that materially false statement affects not only the declarations in that corporate tax return, but the declarations in the individual returns of the principals. As explained this had the effect of defeating the IRS ability to know about the cash in and out of that business and obstructing and defeating the function of the IRS to ascertain, compute, assess and collect revenue from that entity and its principals.

The amount of the cash not reported and the amount of tax not received by the IRS as a result of the conspiracy alleged in Count One is not an element of the conspiracy charged.

2. Count 2 and 3

Count 2 charges that Defendant (Cason), "aided and abetted by persons known to the Grand Jury, willfully aided and assisted in and procured, counseled and advised the preparation and presentation under and in connection with a matter arising under the internal revenue laws of a return which was fraudulent and false as to a material matter in the preparation and filing of a 2008 Form 1120S 'U.S. Income Tax Return for an S Corporation' for AKA Enterprises, Inc. by making materially false statements as to the 2008 gross receipts and sales by not including thousands of dollars in cash sales received by AKA Enterprises, Inc. and by not including cash wages paid by AKA Enterprises, Inc. to one or more employees" in violation of 18 U.S.C. §2, and 26 U.S.C. §7206(2).

In Count 3 Defendant (Cason is charged with aid and assist in the preparation and filing of false tax form 1040 for persons (individuals) in 2008 in violation of 18 U.S.C. §2, and 26 U.S.C. §7206(2).

26 U.S.C. §7206(2) bars willfully aiding, assisting, procuring, counseling, or advising the preparation or presentation under the internal revenue laws, a materially false or fraudulent return, affidavit, claim, or other document, whether or not such falsity or fraud is with the knowledge or consent of the persons authorized or required to present such return affidavit, claim, or document. To establish tax fraud under §7206(2), the government must prove that "(1) the Defendant aided, assisted, or otherwise caused the preparation and presentation of a return; (2) that the return was fraudulent or false as to a material matter; and (3) the act of the Defendant was willful." United States v. Kamalu, 298 F. App'x 251, 255 (4th Cir. 2008), United States v. Nealy, 729 Fl2d 961 (4th Cir. 1984), United States v. Rogers, 853 F.2d 249, 251 n.2 (4th Cir. 1988).

While the proof of the amount of the fraud may be used to support a finding of willfulness United States v. Jennings, 51 F. App'x 98, 99 (4th Cir. 2002), such proof is not an element of the offenses charged in Counts 2 and 3.

B.   Bill of Particulars

"It is settled that the purpose of a bill of particulars is to enable a Defendant to obtain sufficient information on the nature of the charge against him so that he may prepare for trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction in bar of another prosecution for the same offense." U.S. v. Schembari, 484 F.2d 931, 934-935 (4th Cir. 1973).

"[A]n accused has no unconditional right to such a bill." U.S. v. Bales, 813 F.2d 1289, 1294 (4th Cir. 1987) citing U.S. v. Dulin, Jr., 410 F.2d 363, 364 (4th Cir. 1969). "Instead, the granting or

denial of a bill is within the court's discretion." *Id.* In order for Defendant to show abuse of discretion he must be able to prove unfair surprise at trial. United States v. Jackson, 757 F.2d 1486, 1491 (4th Cir. 1985); see also Wong Tai v. U.S., 273 U.S. 77, 83 (1927).

If the United States has an open file policy, the Court may take that in to account in determining whether the "appraisal function of an indictment" is satisfied.. U.S. v. Duncan, 598 F.2d 839, 849 (4th Cir. 1979) and U.S. v. Shembari, *supra* at 935 wherein the Court stated: "Because we believe that the underlying objectives of a Rule 7(f) motion were fully satisfied by the government's voluntary disclosure of its file, we can find no abuse of discretion."

To the extent the government's open file policy is nothing more than a document dump that overwhelms the Defendant with largely useless information, the Court may adopt the "Negative Identification Approach" and require the government to identify what documents or what boxes of documents do not contain any evidence the government would consider using at trial. U.S. v. McDade, 1992 WL 382351 (E.D.Pa. 1992).

    1. Plea of Acquittal, Conviction in Bar, and Bar to Double Jeopardy

Review of the indictment reveals that the three elements of a Klein Conspiracy were sufficiently and clearly alleged against Defendant (Cason) in Count 1. The Grand Jury clearly alleges Defendant (Cason) conspired with others to: 1) prepare false tax forms 2) that were designed to impede the IRS' function in ascertainment, computation, assessment and collection of revenue. The Grand Jury outlines nine (9) specific categories and overt acts committed by Defendant (Cason) in furtherance of the conspiracy in that he: 1) caused the filing of false statements as to the 2005 gross receipts and sales of AKA on its 2006 Form 1120S by failing to include thousands of dollars of cash sales it received; 2) caused the filing of 2006 form 1040 tax return for persons which contained materially false statements as to the 2005 income for those persons; 3) caused the filing

of false statements as to the 2006 gross receipts and sales of AKA on its 2007 Form 1120S by failing to include thousands of dollars of cash sales it received; 4) caused the filing of 2007 form 1040 tax return for persons which contained materially false statements as to the 2006 income for those persons; 5) caused the filing of false statements as to the 2007 gross receipts and sales of AKA on its 2008 Form 1120S by failing to include thousands of dollars of cash sales it received; 6) caused the filing of 2008 form 1040 tax return for persons which contained materially false statements as to the 2007 income for those persons; 7) caused the filing of false statements as to the 2008 gross receipts and sales of AKA on its 2009 Form 1120S by failing to include thousands of dollars of cash sales it received; 8) caused the filing of 2009 form 1040 tax return for persons which contained materially false statements as to the 2008 income for those persons; and 9) caused to be filed Forms 941 for 2005 through 2007 falsely reporting the wages, tips, and other compensation paide by AKA Enterprises, LLC to some of its employees who were paid cash under the table. The tax years for each of the forms that are false are included in the indictment. The specific forms used in the alleged fraudulent understatement of income are set forth in the indictment. The identity of the corporate entity who's forms were prepared by Defendant (Cason) is set forth in the indictment. The nature of the fraud by material understatement of cash income and cash expenses in the forms is outlined in the indictment. Since, AKA is identified as an S corporation filing a Form 1120S, income passes through it directly to its principals. Although the principals are not identified by name in the indictment, their relationship to AKA and to the fraud is.

   Accordingly, the Court finds no need for a bill of particulars to enable Defendant (Cason) to plead his acquittal or conviction in bar of another prosecution for the same offense." U.S. v. Schembari, *supra.*

   2. Open File

During the hearing the United States represented that it had 1) provided Defendant (Cason) with a thumb drive containing all of the documents it has seized from Defendant's offices, the MOI (memorandums of interviews) of co-conspirators and witnesses, including one or more employees allegedly paid under the table and whose wages were not reported by AKA or its principals and 2) provided Defendant (Cason) with access to the boxed files of materials seized during the searches conducted on the same day Cason's office was searched. In short, the United States represents it has given Defendant (Cason) virtually everything or access to everything the United States has.

Defendant (Cason) does not dispute that he has the thumb drive and that he has had access to the boxed files of materials seized during the searches conducted on the same day Cason's office was searched. Defendant (Cason) represented he had been to the file room twice and spent time reviewing the files in about nine (9) boxes.

His complaint is that: there is too much material to be reviewed at the storage site and that the United States should be required to organize and copy the files and provide him with the digital copy in a searchable format or cull the files for any and all exculpatory or potentially exculpatory information. This Court disagrees. "[T]he Brady rule does not apply if the evidence in question is available to the Defendant from other sources." ... "Where exculpatory information is not only available to the Defendant but also lies in a source where a reasonable Defendant would have looked, a Defendant is not entitled to the benefit of the Brady doctrine." Barnes v. Thompson, 58 F.3d 971, 975 (4th Cir. 1995).

The United States does not intend to use much, if any, of the materials in the file storage, resists culling the files for exculpatory or potentially exculpatory evidence primarily because it does not know what Defendant (Cason) would consider exculpatory and it does not believe Brady requires it to make such a search. It therefore offers to turn the files over to a third party (vendor) selected

by Defendant (Cason) to scan to a searchable digital format at Defendant's expense.

   3.  Specific Requests In The Bill Of Particulars:

      A. and B.  Expert Witness or Witnesses

The United States argues it has not determined whether it will have an expert witness or witnesses; that it is premature to require the United States to make that determination; that it is premature to force the United States to designate an expert witness; and that the decision as to a schedule for declaration of expert witnesses should be left to the sound discretion of the trial judge at the already scheduled status conference.  Defendant (Cason) tacitly concedes that the District Judge will likely set a scheduling order at the now scheduled August 20, 2015 scheduling conference.  (Hearing Transcript p. 15-21.)

The United States is not in violation of any scheduling order to date inasmuch as the initial scheduling order entered by the magistrate judge was mooted by the District Judge's later designation of the case as "complex."

The United States cannot be forced to produce that which it does not now have.

To the extent, the United States may use the services of the accountant who prepared Mr. Reese's business returns for a test year in which all income, cash and credit, was accounted and that person is determined to be an expert, the United States represents and Defendant (Cason) does not contradict that the returns prepared by that person and everything that accountant - Lynn Flint - has was turned over to Defendant (Cason).  (Hearing Transcript p. 18-20.)

      C.  Chadwick Report

Defendant (Cason) has the Chadwick Report.  (Hearing Transcript p. 23:25.)  Chadwick is an attorney from New Jersey or Philadelphia retained by Reese in behalf of AKA to put together a report based on "the legitimate year information."  (Hearing Transcript p. 24:12-20.)  The United

States has not precluded Defendant (Cason) from talking with Attorney Chadwick or any one associated with him in the preparation of the Chadwick Report. (Hearing Transcript p. 24:24.) The United States represents it does not have the work papers for the Chadwick Report and has no intent to use the report as it is not part of the case. (Hearing Transcript p. 26:18-25 and p. 27:1-20.)

To the extent the work papers for the Chadwick Report are being sought by Defendant (Cason), the United States does not have those documents; they were prepared by someone retained by Mr. Reese; and may be available to Defendant (Cason) by subpoena duces tecum under Rule 17. To the extent Ms. Flint used any of the information from the Chadwick Report, does not mean that she had the underlying work papers to that report. (Hearing Transcript p. 32: 12-13.) What she may have used or not used from the Chadwick Report itself and whether she had or did not have the underlying work papers to that Report for review is appropriate grist for the cross-examination mill or other motion in limine or Daubert motion practice. In any event, the Court cannot force the United States to produce that which it says it does not have.

> D, E, F, H, I: Cash Sales, Materially False Statements On 1040 Returns As To Income, Materially False Statements On 914 Returns As To Wages, Tips And Other Compensation, Materially False Statements On 1120 S Returns As To Cash Sales, and Materially False Statements as to the 2008 inclome for unnamed and unidentified persons on Form 1040 Returns

Defendant (Cason) seeks to have the Court order the United States to look through 50 to 200 file boxes of materials seized from places searched other than Cason's business for evidence which would show the amounts of alleged cash sales by the businesses in question, the amounts of alleged cash paid under the table to employees, the amounts of income allegedly not reported during the years 2005, 2006, 2007, 2008 and 2009.

The United States says it does not know the amounts of cash sales and employee cash wages were unreported making the returns for the corporation and the owners thereof materially false. It argues that the very nature of the fraud is to not keep records of case earned and cash paid so there is no record the IRS or others can look to in order to prove a taxpayer with the help of a tax preparer was skimming cash. The United States points out that it does not have to prove the exact amounts. It contends it only has to prove that cash sales and cash wages were unreported as part of the scheme to prevent the IRS from performing its function. (Hearing Transcript p. 139:1-21 and 142-143.)

The United States argues it cannot produce what it does not have and is not required to prove and whatever the United States has, the Defendant is welcome to look at. (Hearing Transcript p. 143:-17). Moreover, the United States argues and the Court agrees, that to the extent Defendant (Cason) believes the materials in the 50 to 200 boxes of materials seized from entities other than Cason's office may contain such information, Defendant (Cason) is free to look in those boxes and to have the United States give those boxes of materials to a third party contractor to be copied and scanned in to a searchable digital format at Defendant's expense.

F.R.Crim.P. 16 (a)(1)(E) only requires: "Upon a defendant's request, the government must permit the Defendant to inspect and to copy or photograph boxes, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the Defendant."

Based on the arguments made at the hearing, it is clear the 50-200 boxes do not fall under ii or iii above. Defendant (Cason) argues the boxes may contain information that is exculpatory and

therefore material to the defense. To that end, Defendant is free to look at the boxes and is also free to take the United States up on its offer to give the boxes to a third party contractor to be copied and scanned in to a searchable digital format at Defendant's expense. Nothing in F.R.Crim.P. requires the United States to inspect, organize and/or copy those documents at its expense and give the so inspected, organized and/or copied documents to Defendant.

To the extent Defendant (Cason) seeks the identities of persons not identified in the indictment, the United States rendered the request moot by its disclosure of Four individuals names at the hearing: Mr. Dawson, Mr. Reese, Mr. Reese's wife (unknowingly) and Mr. LaPinto. (Hearing Transcript p. 41:7-8.)

The United States did offer to disclose the "core documents" from the 50-200 boxes of materials that it would rely on by August 13, 2015. (Hearing Transcript p. 144-145.)

### G. Other Overt Acts

A conspiracy conviction requires that government prove (1) agreement between two or more people to commit a crime, and (2) overt act in furtherance of conspiracy. U.S. v. Ellis, 121 F.3d 908 (4th Cir. 1997.) Count I of the instant indictment alleges Defendant (Cason) conspired with others to defraud the United States (IRS) by aiding and assisting in the preparation and filing of false tax forms for the "purpose of impeding, impairing, obstructing and defeating the lawful government functions of the" IRS "in the ascertainment, computation, assessment, and collection of revenue: to wit:: income and employment taxes and did acts to effect the objects of the conspiracy." Count I then proceeds nine (9) specific sets of overt acts performed by Defendant and others in the furtherance of the alleged conspiracy adding therein "10. Other overt acts."

Defendant offers no authority supporting his claim that the Court should force the Government to file a bill of particulars specifying the "other overt acts." The Court was unable to

find any such authority. (See Hearing Transcript p. 147:14-21.)

Accordingly, the Court sees no justification for a bill of particulars requiring the United States to particularize what the Grand Jury meant in the "10. Other overt acts" clause of Count I.

        J.        CD Copies Of Documents Seized From Defendant (Cason)

This claim for a bill of particulars requiring the United States to scan copy to digital form all documents seized from Defendant (Cason) during the search of his office is mooted by the United State's representation that it had scanned all those documents and provided them to Defendant (Cason) on a thumb drive and Defendant's counsel's acknowledgment that he had the thumb drive.(Hearing Transcript p. 149-150.)

        K, L, M, N, O, P, Q, R, S, T, U, and V requests for bill of particulars were resolved by the parties at the hearing through representations that the materials are either on the thumb drive Defendant (Cason) has or in the boxes that Defendant (Cason) may examine and/or have copied at his own expense or are not under the control of the United States but may be available through Defendant's use of the Rule 17 subpoena power which the United States would not generally oppose. (See Hearing Transcript p. 150-157.)

## IV.
## Decision and Order

For the reasons stated herein, except for disclosure of the "core documents" from the materials seized during the searches (including the 50-200 boxes of materials seized by the United States from others than Defendant (Cason), and which core documents the United States plans to rely as part of the proof of its case in chief, (Hearing Transcript p. 144-145) Defendant's (Cason) Motion For Bill of Particulars (Docket No. 15) is DENIED. Consistent with its offer the United States shall produce copies of its core documents to Defendant by not later than August 18, 23015.

The clerk of this Court is directed to provide electronic notice of the filing of this Memorandum Opinion and Order to all counsel of record. The clerk of this Court is further directed to remove Docket No. 15 from the docket of motions actively pending before this Court.

It is so **ORDERED.**

Dated: August 7, 2015

*/s/ John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE