IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

          **Plaintiff,**

v.                              **CRIMINAL NO. 1:15CR30**
                                      (Judge Keeley)

**GREGORY N. CASON,**

          **Defendant.**

**MEMORANDUM OPINION AND ORDER
OVERRULING OBJECTIONS [DKT. NO. 39],
ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 34],
AND DENYING MOTION TO SUPPRESS STATEMENTS [DKT. NO. 17]**

Pending before the Court is the "Motion to Suppress Statements" (dkt. no. 17) filed by the defendant, Gregory N. Cason ("Cason"). Also pending are the Report and Recommendation ("R&R") of the Honorable John S. Kaull, United States Magistrate Judge, as well as Cason's objections to the R&R (dkt. no. 37). For the reasons that follow, the Court **OVERRULES** Cason's objections, **ADOPTS** the R&R, and **DENIES** the motion to suppress.

### I. BACKGROUND

On May 28, 2010, the Tax Division of the United States Department of Justice authorized a grand jury investigation[1] into allegations of tax fraud by Cason, an accountant located in Morgantown, West Virginia. Pursuant to that investigation, agents

---

[1] As Special Agent Jason Gandee explained during the suppression hearing, a grand jury investigation (in contrast to an administrative investigation) is one in which the United States Attorney's Office takes the lead. (Dkt. No. 32 at 107:11-25).

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

of the Internal Revenue Service ("IRS") obtained a search warrant for Cason's office. Several other individuals in the Morgantown area were also under investigation, and the IRS planned to execute warrants at the various locations simultaneously on the morning of June 3, 2010. In this way, they intended to reduce the risk of tipping off the targets and to mitigate safety concerns.

IRS Special Agents Jason Gandee ("Gandee") and Matthew Schommer ("Schommer"), who were assigned to Cason, arrived at his house at approximately 7:30 a.m. on June 3. When Cason came out to meet them on the front porch, they identified themselves as IRS agents and displayed their badges. According to the agents, they advised Cason (1) that he was a target in their investigation; (2) that he had the right to an attorney; and (3) that he was not compelled to answer their questions. Cason, however, contends that the agents never advised him of any rights, and did not inform him that he was under investigation until later in the day.

After Cason's children left for school, he and the two agents stepped inside the house where his wife, Shelley Cason ("Mrs. Cason"), was waiting. She inquired whether she and Cason were in trouble and whether they needed a lawyer. According to her recollection, Gandee responded that they were investigating one of her husband's clients. As Gandee would later explain, "I had no

**USA v. CASON**                                                              1:15CR30

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

reason to believe Mrs. Cason did anything wrong, and still don't believe she did anything wrong. Mr. Cason would be a different story, and I explained that to Mr. Cason individually, because that's business that he can take up with his wife separate from me getting involved in that." (Dkt. No. 32 at 135:18-24).

The agents then advised Cason that they needed to get into his office to review his business records, and they asked him to let them in because they "didn't want to either call a locksmith or break the door in." Id. at 46:14-15. Although Cason replied that his secretary was already at work and could let them in, the agents requested that he call the secretary and ask her to leave for the day. Cason agreed, but said that his cell phone was upstairs. Gandee requested that Mrs. Cason retrieve it; after she did so, Cason placed the call.

According to Cason, he then asked the agents whether they would like to follow him to the office, but they answered, "No, you'll be going with us." Id. at 86:25-87:1. They directed Cason to the back seat of their vehicle, where he sat next to Schommer while Gandee drove. When they arrived at Cason's office, five or six additional agents were waiting. Cason showed them around the office and told them where they would find the records. Gandee and

3

USA v. CASON                                                          1:15CR30

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

Schommer then escorted him into a conference room and shut the door.

When they sat down, about 8:00 a.m., Gandee handed Cason the search warrant. Before Cason could review it, however, his cell phone rang. It was Edmund Rollo ("Rollo"), a local attorney, whom Mrs. Cason had contacted after her husband left with the agents.[2] Rollo asked Cason, "everything okay?" Id. at 103:20. Cason responded that he and the two agents were reviewing information related to one of Cason's clients. Satisfied with that answer, Rollo hung up.

For the next hour, the agents showed Cason a series of tax returns and questioned him about them. They also played a recorded conversation involving an undercover agent who had called Cason, posing as a potential buyer for a bar owned by one of Cason's clients. As Cason would explain, he told the undercover agent some "bull s***" about the business in an effort to sell it and earn a commission.

According to Cason, he still did not feel that he was a subject of their investigation during this exchange, and thought

---

[2] Rollo and Cason did not have a previous professional relationship. In fact, each described the other as an "acquaintance."

USA v. CASON                                                    1:15CR30

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

that he was merely cooperating in an investigation of his clients. Thus, when Rollo called a second time, around 9:00 a.m., Cason advised him, "They are just asking me questions." Id. at 96:21.

After Cason hung up with Rollo the second time, the agents played some additional segments of the recorded telephone call. They then asked Cason whether he understood the legal concept of willful blindness; referring to the recorded call, they told him that they had enough evidence to put him in prison for five years. At that point, Cason declared, "That's enough." Id. at 98:6. He stood up, walked outside, and left a voicemail for Rollo. As Rollo would later describe it, Cason sounded like he was "in a panic" because he now understood that he "was a target of a criminal investigation." Id. at 105:4-8. Cason then called another local criminal defense attorney, John Wiley ("Wiley"), who had been Cason's client.

Wiley arrived at Cason's office at 10:00 a.m. and asked to speak with Cason. The pair walked outside and returned about fifteen minutes later. Immediately after their return, another attorney, Gary Wigal ("Wigal"), arrived. Wigal represented one of Cason's clients who, like Cason, was under investigation by the IRS. After speaking with Wiley for a few minutes, Wigal left. Soon thereafter, Rollo arrived, and Wiley, who was feeling ill, left the

5

USA v. CASON                                                      1:15CR30

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

office. Rollo spoke with the agents and listened to a portion of the recorded telephone conversation. He then informed the agents that "there would be no additional questions at that time." Id. at 105:25-106:1. Gandee indicated that this conversation occurred between 11:15 a.m. and 12:00 p.m.

Over the next few weeks, Gandee prepared a "memorandum of interview," documenting what had occurred. Importantly, in the first paragraph of his memorandum he stated as follows:

> Special Agents Schommer and Gandee approached Greg Cason (Cason) at his residence . . . at approximately 7:30 a.m. The agents displayed their law enforcement credentials to Cason. Cason was advised that the agents are presently assisting the United States Attorney's Office in the Northern District of West Virginia in an investigation and that we wanted to speak with him. . . . We proceeded in to the residence where <u>Cason was informed that we had a search warrant for his office</u> as well as other locations in the Morgantown area. <u>Cason was informed he is the subject of a criminal investigation, that he had the right to legal counsel, and that he did not have to answer any of our questions</u>. . . . The agents then escorted Cason to his office where he unlocked the business at 7:55 a.m.

(Dkt. No. 28-2 at 1) (emphasis added). Gandee provided the memorandum to Cason and Rollo for their review. Although Cason noted "a few inaccuracies," he said there was "nothing 'major.'" Id. at 9.

On March 3, 2015, the grand jury indicted Cason on three counts. Count One charges "conspiracy to defraud the [IRS] and to

6

USA v. CASON                                                  1:15CR30

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

aid and assist in the preparation and filing of false tax forms," in violation of 18 U.S.C. § 371. Counts Two and Three charge separate incidents of "aiding and assisting in the preparation and filing of false tax form," in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7206(2).

On June 30, 2015, Cason moved to suppress "all statements made by him to the IRS agents on June 3, 2010." (Dkt. No. 17 at 3). In his motion, he presses two arguments: "(1) the IRS agents failed to provide Mr. Cason his Miranda warnings in violation of Mr. Cason's constitutional rights . . . ; and (2) the IRS agents failed to follow established IRS policy in violation of Mr. Cason's due process rights under United States v. Heffner, 420 F.2d 809 (4th Cir. 1969) and its progeny." Id. at 2-3.

During a suppression hearing on July 20, 2015, Cason testified on his own behalf, and also called his wife and Rollo as witnesses. The government called Schommer and Gandee, and introduced into evidence the Tax Division's grand jury investigation letter and the agents' memorandum of investigation.

After hearing the testimony and reviewing the evidence, Magistrate Judge Kaull determined that the agents had advised Cason (1) that he was a subject of their investigation; (2) that he had the right to an attorney; and (3) that he was not compelled to

USA v. CASON                                                              1:15CR30

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

answer their questions and could terminate the interview. Magistrate Judge Kaull concluded that these warnings satisfied constitutional guarantees, and, in any event, Cason was never in custody, and the interview was not coercive. He further concluded that the IRS policy relied on by Cason was not applicable. Accordingly, he recommended that the Court deny Cason's motion to suppress.

In his objections to the R&R, Cason does not dispute Magistrate Judge Kaull's conclusion that the IRS policy is inapplicable. He does, however, contend that he was subject to custodial interrogation and thus entitled to warnings under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

## II. STANDARD OF REVIEW

In conducting an evidentiary hearing and entering an R&R, Magistrate Judge Kaull acted in accordance with 28 U.S.C. § 636(b)(1)(B). Therefore, this Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made." § 636(b)(1). Interpreting this statute, the Supreme Court of the United States has explained that "Congress intended to permit whatever reliance a district judge, in the exercise of sound

8

USA v. CASON                                                    1:15CR30

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

judicial discretion, chose to place on a magistrate's proposed findings and recommendation." United States v. Raddatz, 447 U.S. 667, 676 (1980). District courts apply "the same standard in reviewing a decision of a magistrate judge [] as a court of appeals does in reviewing a decision of a district court," that is, "'findings of fact are reviewed under a clearly erroneous standard and matters of law are reviewed de novo.'" U.S. v. Graham, 2006 WL 1720675, at *1 (E.D.Va. 2006) (quoting Florists' Mut. Ins. Co. v. Tatterson, 802 F.Supp. 1426, 1431 (E.D.Va. 1992)).

### III. DISCUSSION

Given that Cason has not objected to Magistrate Judge Kaull's conclusion that the IRS policy was inapplicable, and finding no clear error, the Court **ADOPTS** the reasoning of the R&R regarding this issue.[3] Cason, however, has objected to the conclusion that he was not the subject of a custodial interrogation and therefore not entitled to a Miranda warning. Accordingly, review of this issue is de novo. For the reasons that follow, the Court **OVERRULES**

---

[3] "[T]he Court may adopt, without explanation, any of the magistrate judge's recommendations to which the [defendant] does not object." Dellacirprete V Gutierrez, 479 F. Supp. 2d 600, 603-04 (N.D. W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir.1983)).

9

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

Cason's objections, **ADOPTS** the R&R in its entirety, and **DENIES** the motion to suppress.

**A.**

The United States Constitution guarantees that "[n]o person . . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. For that reason, "the Supreme Court has required law enforcement to inform individuals who are in custody of their Fifth Amendment rights prior to interrogation." U.S. v. Hashime, 734 F.3d 278, 282 (4th Cir. 2013) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966); United States v. Parker, 262 F.3d 415, 419 (4th Cir. 2001)). Absent a Miranda warning, "evidence gathered from the interrogation is generally inadmissable." Hashime, 734 F.3d at 282 (citations omitted). The question presented here is whether Cason was in custody and therefore entitled to a Miranda warning.

It is undisputed that Cason was not under formal arrest. Nonetheless, determining if a defendant was in custody depends on whether, "under the totality of the circumstances, 'a suspect's freedom of action [was] curtailed to a degree associated with formal arrest.'" Id. (quoting Parker, 262 F.3d at 419 (quoting in

USA v. CASON                                                    1:15CR30

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

turn Berkemer v. McCarty, 468 U.S. 420, 440 (1984))). Ultimately, courts may consider an interrogation custodial if "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." Id. at 282-83 (quoting United States v. Jamison, 509 F.3d 623, 628 (4th Cir. 2007) (alteration in original)). In Hashime, the Fourth Circuit recognized several non-exhaustive areas of the custodial inquiry, including "the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant." Id. at 283 (quoting United States v. Day, 591 F.3d 679, 696 (4th Cir. 2010)). In the R&R, Magistrate Judge Kaull made the following factual findings:

- After knocking on Cason's front door, the agents waited on his porch for three to four minutes while Cason's daughters left for school, hardly indicating custody or restriction;

- The agents tone did not change once they entered the home;

- The agents twice informed Cason that he was the subject of an investigation, that he was free to consult with an

11

USA v. CASON                                                        1:15CR30

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

       attorney, and that he was free to end the interview at any time[4];

- The agents did not restrict Cason's freedom of movement;

- When the agents requested that Cason ride with them to his office, he willingly agreed;

- While at his office, Cason was free to take phone calls and to leave the room, which he did multiple times, indicating that he freely ended his conversation with the agents at multiple points;

- While at his office, Cason was free to consult with counsel, and to end the interview, which he ultimately did; and

- Nothing in the record indicated that Cason was threatened or coerced.

Unless clearly erroneous, the Court applies these factual findings to its own custodial inquiry. See Graham, 2006 WL 1720675, at *1.

---

[4]Agent Gandee recounted this fact in his memorandum of interview, which he gave Cason the opportunity to review a few weeks later. The memorandum clearly indicated that Cason had been "informed he [was] the subject of a criminal investigation, that he had the right to legal counsel, and that he did not have to answer any of [their] questions." After reviewing the memorandum together with his legal counsel, Cason noted that there were no "major" inaccuracies.
    In his objections to the R&R, Cason argues that he "should have testified as to the nature and completeness of his review of the Memorandum, as should have [his attorney]," and that "[n]onetheless, [his] brief review of the Memorandum weeks later does not change any of the facts recited above." (Dkt. No. 39 at 9). Yet, Cason fails to explain how a memorandum wrongfully indicating that he had been informed of such highly pertinent facts and rights, of which both he and his attorney were fully aware, somehow contained no "major" inaccuracies.

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

Having thoroughly reviewed the entirety of the record, including the suppression hearing transcripts and the R&R, the Court concludes that Magistrate Judge Kaull's findings are not clearly erroneous and, accordingly, adopts them as its own.

**B.**

Applying these facts to the factors recognized in Hashime, Cason's interview clearly was not custodial.[5] See Hashime, 734 F.3d at 282. In Hashime, the Fourth Circuit analyzed whether the defendant had been subjected to a custodial interrogation. There, fifteen to thirty law enforcement officers armed with a battering ram executed a search warrant on Hashime's residence by "bang[ing] on the entrance, yelling 'Open the door.'" Id. at 280. The officers then streamed into his house with their guns drawn; one officer entered Hashime's bedroom, where they found him naked and asleep. Id. The officer pointed his gun at Hashime and ordered him to get

---

[5] It should be noted that, although imperfect, the agents twice gave Cason a partial Miranda warning. He was informed that he was the subject of an investigation and that he could speak to counsel, which he did on multiple occasions. Further, he was twice informed that he could end the interview at any time, which he eventually did.

USA v. CASON                                                    1:15CR30

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

out of bed with his hands showing, following which he "held Hashime by the arm, issuing orders to him, and marched him out to the front lawn, where officers were corralling the other members of his family." Id.

Hashime's family was eventually sequestered in the living room while the officers conducted a security sweep of the home. They were not allowed to be alone without an officer present. Id. at 281. Two officers then escorted Hashime, without shoes or socks, to an unfinished basement storage room where he was interrogated for three hours. Id. According to Hashime's mother, she asked the officers on three occasions for an attorney for her son, but they refused, telling her she could not see her son or otherwise interrupt the questioning, and that he was under arrest. Id.

As the Fourth Circuit recognized, Hashime's "'house was swarming with federal and state agents, he was rousted from bed at gunpoint, held with family members and not allowed to move unless guarded, and ultimately separated from his family and placed in a small storage room with two agents where he was questioned by investigators' . . . who stated that he must remain under guard and that they needed 'to know the truth.'" Id. at 285. Ultimately, citing "the large number of armed law-enforcement agents, the suspect's isolation during his interrogation, and the suspect and

14

USA v. CASON                                                          1:15CR30

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

his family's loss of control over their home," the court concluded that Hashime was in custody. Id.

The facts in the case at bar differ substantially from those in Hashime. As for the "time, place, and purpose of the encounter," only two agents, dressed in suits, approached Cason's house and knocked on the front door during daylight hours when everyone would be expected to be awake. Id. at 283. Moreover, they waited patiently on the front porch until Cason's daughters left for school. The second part of the interview occurred at Cason's office during normal business hours, and the entirety of the agents' questioning occurred in the relatively comfortable confines of either Cason's home or office. This is a far cry from an interview in a squad car, an interrogation room, or an unfinished basement storage room.  Nor is it a nighttime raid by uniformed officers with weapons drawn, followed by intense questioning. Indeed, on multiple occasions Cason stopped the interview to answer his phone and even left the building to converse with the caller.

Nor is there any indication that the words, tone, and demeanor of either the officers or Cason amounted to anything other than a calm exchange of questions and answers. The two agents present at Cason's home both wore suits:  although they had firearms with them, there is no evidence they ever unholstered them, let alone

USA v. CASON                                                         1:15CR30

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

drew or pointed them at Cason or his family.[6] Finally, there is no evidence, nor even an allegation, that any physical contact occurred between Cason and the agents.

Under the totality of the circumstances, it is plain that, at no time, was Cason's "freedom of action curtailed to a degree associated with formal arrest." Id. at 282. (quoting Parker, 262 F.3d at 419 (quoting in turn Berkemer, 468 U.S. at 440)). Nor was he coerced in any way. Moreover, there is no evidence that Cason would have felt that he was not at liberty to terminate the interrogation and leave. Indeed, he eventually did just that. See id. at 282-83. Consequently, the Court concludes that Cason's interrogation was not custodial, and that he was not entitled to a Miranda warning at the time he voluntarily answered the agents' questions.

## IV. CONCLUSION

Finding no basis on which to suppress Cason's statements to the IRS agents, the Court **OVERRULES** his objections, **ADOPTS** the R&R, and **DENIES** the motion to suppress.

It is so **ORDERED.**

---

[6]At Cason's office, five or six additional agents were present. Nevertheless, there is no evidence that these agents had weapons, let alone drew them at any time.

USA v. CASON                                                      1:15CR30

**MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: October 14, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE
